UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WENDY PALMER BAGWELL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-00216** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **SECTION: "I" (4)** |

## REPORT AND RECOMMENDATION

**I.    Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g).  The Commissioner denied Wendy Bagwell's claim for Disability Insurance under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c).  The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

**II.    Factual Summary**

The claimant, Wendy Bagwell ("Bagwell"), filed this appeal of the denial of Disability Insurance Benefits. R. Doc. 1, Tr. 95. Bagwell is a fifty-six year old female[1] who suffers from an acute compression fracture requiring a fusion, disorders of the back, diarrhea, and obesity (165.0 lbs., 63 inches).  R. Doc. 18, Tr. 95.  Bagwell alleges that her disability started on February 1, 2013. R. Doc. 14-3, Tr. 97.

---

[1] At the time of the hearing she was fifty-four and fifty-five years of age respectively. R. Doc. 18.

Her application was initially denied on October 3, 2013. R. Doc. 14-3, Tr. 95-104. Bagwell then filed a request for a hearing on December 13, 2013, which took place on January 8, 2015 and April 4, 2015 before Administrative Law Judge Michael S. Hertzig. ("ALJ"). R. Doc. 14-2, Tr. 24-94. Thereafter, the ALJ issued a decision finding Bagwell was not disabled. *Id.* at Tr. 1-5. That decision was affirmed by the Appeals Council. *Id.* at Tr. 1-5.

Bagwell filed her claim alleging that she was disabled as a result of disorders of the back and obesity R. Doc. 14-2, Tr. 13. The ALJ determined that Bagwell was not disabled. R. Doc. 14-2, Tr. 18. The ALJ found that Bagwell had the following severe impairments: disorders of the back and obesity. *Id.* at Tr. 13. The ALJ further held that Bagwell's chronic diarrhea is "non-severe" because the medical evidence of record shows it to be no more than a slight abnormality having such a minimal effect on the claimant that it would not be expected to interfere with her ability to work. *Id.*, Tr. 14. The ALJ noted that an impartial medical expert, Dr. Goldstein did not see anything in the medical evidence of record related to the claimant's attestations of chronic diarrhea seven times a day, dehydration, getting up six times a night, and difficulty with sleep and nothing in the record that would explain these assertions. *Id.* However, the ALJ found that none of Bagwell's impairments met or medically equaled the severity of the one of the listed impairments. *Id.*

Thereafter, the ALJ determined that Bagwell had a residual function capacity ("RFC") to perform the full range of sedentary work. *Id.* The ALJ further found that Bagwell was capable of performing past relevant work as a night auditor because the work does not require the performance of work-related activities precluded by her residual functional capacity. *Id.*, Tr. 18. The ALJ found that she was able to perform her past relevant work as a night auditor as actually and generally performed. The claimant has not been under a disability from February 1, 2013 though the date of decision, June 8, 2015.

Bagwell argues that the ALJ's denial of her disability was incorrect for four reasons. R. Doc. 18. First, Bagwell argues that substantial evidence does not support the ALJ's finding that chronic bowel incontinence is non-severe. She further contends that the ALJ was required by law, but failed, to include in the RFC any limitations from her chronic bowel incontinence. Second, Bagwell contends that the medical expert was not provided all of her medical records for review before the telephone testimony of the medical expert. Third, Bagwell contends that the ALJ failed to consider SSR 02-2p and SSR 15-1p regarding her chronic diarrhea. Fourth, that the ALJ's opinion is not based upon substantial evidence because he did not properly detail the evidence he considered in reach his credibility determination.

In response, the Commissioner contends that Bagwell failed to prove that her chronic diarrhea was a severe impairment or that it caused any work-related limitations beyond a restriction to sedentary work. R. Doc. 21. The Commissioner contends that the medical expert considered the entire medical record. The Commissioner contends that Bagwell asserted two additional arguments in the conclusion section of her brief. As a result, the Commissioner addressed them for the sake of completeness and argues there was no reason to consider the SSRs and the ALJ fully assessed the subjective complaints.

### III.  Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402

U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credibility choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-Step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform

his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at Step Five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.     Analysis**

    **A.     Finding that Chronic Diarrhea as Not Severe**

Bagwell contends that the ALJ's finding that her chronic bowl incontinence is non-severe is not based upon substantial evidence. She further contends that the ALJ was required but failed to include in the residual functional capacity any limitation from her chronic bowl incontinence. R. Doc. 18.

The Commissioner contends that the ALJ's finding that Bagwell's chronic incontinence is not severe is based upon substantial evidence because Bagwell failed to present any medical evidence supporting her work-related limitations caused by diarrhea. R. Doc. 21.

The ALJ noted that Bagwell testified that she did not sleep well and woke up and sat on the toilet for two hours due to diarrhea at least six nights a week. R. Doc. 14-2, Tr. 15. She reported that she was exhausted after these episodes and that she also had experienced bouts of incontinence in public. *Id.* During the hearing, Bagwell testified that she experienced constant diarrhea and was up from 2:30 a.m. to 7:30 a.m. the night before the hearing using the toilet. *Id.*, Tr. 16.

She also testified that the dicyclomine prescribed by Dr. Benning did not stop her diarrhea and that she could not control her diarrhea. *Id.* The ALJ noted Dr. Goldstein testimony that he did not see anything in the medical evidence of record related to the claimant's attestations of chronic diarrhea seven times a day, dehydration, getting up six times a night, and difficulty with sleep and

nothing in the record would explain the assertions. *Id.*, Tr. 17. He also noted Dr. Goldstein's testimony that an injury to the T12 through L2 level could have an effect on bowel incontinence if there was the presence of cauda equina syndrome. He also noted the testimony that if there was just bowel incontinence without bladder incontinence, as Bagwell testified, that it would be localized to the bowel and something that should be investigated by a gastroenterologist. *Id.*

The ALJ, in concluding that Bagwell's chronic diarrhea was non-severe, properly considered her testimony as well as the expert's testimony that he did not see anything in the medical evidence of record related to her attestations of chronic diarrhea. *Id.* The ALJ further noted that there was nothing in the record that would explain her assertions of uncontrolled diarrhea. *Id.* The ALJ accorded great weight to the opinion of Dr. Goldstein.

There is no dispute that incontinence may be an impairment for purposes of the Social Security. *Crowly v. Apel,* 197 F.3d 194, 198 (5th Cir. 1999). According to the record, on September 2014, Bagwell's both her gastrointestinal and abdominal findings were normal. R. Doc. 14-10, Tr. 549, 756. The record shows that on December 2014, Bagwell complained that she had been experiencing diarrhea for two and one half years since taking Zanaflex. R. Doc. 14-9, Tr. 739. She reported on occasion stool incontinence. *Id.* She was diagnosed with chronic diarrhea and the doctor noted that they would assess her colon by ordering a colonoscopy and a stool culture in the future. *Id.* The doctor also noted that her diarrhea was likely due to Zanaflex even though it resolved her back spasms. *Id.* He started her on Bentyl, a medication used to treat incontinence.

The medical records after the December 2014 visit do not indicate that Bagwell was still taking Bentyl. On January 20, 2015, she returned for an examination and upon examination her gastrointestinal system was normal and no problems were indicated. R. Doc. 14-10, Tr. 750.

Further, the record of February 9, 2015 shows that upon examination her gastrointestinal system was normal, but she complained of diarrhea. R. Doc.14-10, Tr. 747. When she returned a few days later, on February 12, 2015, she denied incontinence. R. Doc. 14-10, Tr. 742. Nor is there evidence that the colonoscopy or other diagnostic tests were done to assess the cause of her diarrhea.

The record does not support the existence of work-related limitations due to diarrhea. Tr. 552, 557, 738, 742, 747, 750 and 756. There is also no evidence that any treating physician-treated or otherwise recommended any work-related restrictions due to diarrhea or bowel incontinence. Tr. 42. In fact, two months before the ALJ's hearing the February 2015 visit indicated that she had normal gastrointestinal and abdominal findings. R. Doc. 14-10, Tr. 742.

Contrary to Plaintiff's argument, the ALJ's finding of the diarrhea as non-severe is within his authority. *See Higgs v. Bowen,* 880 F. 2d 860, 863 (6th Cir. 1988) ("The mere diagnosis arthritis, of course, says nothing about the severity of the condition. The doctors' reports are silent regarding any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain. We have upheld findings of no severe impairment in cases involving similar records." (citation omitted). The ALJ's decision that Bagwell's incontinence is therefore based upon substantial evidence.

### B.     **Medical Expert's Completeness of Review**

Bagwell next contends that the medical expert was not provided all of the medical records to review before giving his testimony. The Plaintiff points out that the Dr. Goldstein did not have Exhibit 10 F. He also points out that the ALJ "skimmed the records aloud" to Dr. Goldstein regarding Dr. Domangue's charting of her complaints of diarrhea. Although Bagwell points out that Dr. Goldstein did not have the medical records, she fails to point out the failure to review this record impacted the determination.

The Commissioner concedes that Dr. Goldstein did not have Dr. Domangue's records before the hearing, but contends that the ALJ explained the contents of the exhibit to Dr. Goldstein before he testified.

The ALJ noted Bagwell's testimony regarding her constant diarrhea and noted that she was up from 2:30 a.m. to 7:30 a.m. the night before the hearing using the bathroom. R. Doc. 14-2, Tr. 16. She testified that the medication prescribed by Dr. Benning did not stop her diarrhea and that she could not control. *Id.*

The ALJ further noted Dr. Goldstein's testimony that an injury to the T12 through the L2 level could have an effect on bowel incontinence if there was the presence of cauda equina syndrome. *Id.*, Tr. 17. He also noted that if there was just bowel incontinence without bladder incontinence that the problem would be localized to the bowel and that it should be investigated further. *Id.* The ALJ noted that he did not find that Bagwell's statements regarding the severity of her impairments or the degree of her limitations were fully credible. *Id.* For example, he noted that while she testified that she was in great pain and experienced chronic diarrhea, she also reported an active and wide range of daily activities including daily trips to Wal-Mart, daily two-to-three hour visits with her mother at a nursing facility to sit with her and check in with her mother's nurses, and daily cleaning. *Id.* The ALJ further noted Dr. Goldstein, whose testimony was accorded great weight, noted that her activities were most consistent with a light level of activity. *Id.*

Although Dr. Goldstein did not have access to Exhibit 10 F, there is no dispute that the records were summarized by the ALJ and considered by Dr. Goldstein. Thus, the ALJ had both accurate medical records and Dr. Goldstein's interpretation of the medical records available when the ALJ issued her decision. Therefore, the ALJ's decision is based upon substantial evidence because: (1)

the medicals were considered; and (2) Bagwell failed to establish that she suffered prejudice based upon the alleged error.

      **C.**     **SSR 02-2p and 15-1p**

Bagwell also indicates that the ALJ did not consider Social Security Ruling 02-2p and its replacement SSR 15-1p, which she contends address the incontinence issue. Both SSRs according to the Commissioner address guidance on how to evaluate claims involving interstitial cystitis (IC), a bladder disorder.

According to SSR 02-2p and SSR 15-1p, IC is a complex, chronic bladder disorder characterized by urinary frequency, urinary urgency, and pelvic pain. IC occurs most frequently in women (about 10 times more often than in men), and sometimes prior to age 18.

However, IC is not an issue in this case. As a result there is no error for failing to consider SSR 02-2p and SSR 15-1p and the decision is based upon substantial evidence.

      **D.**     **Credibility of Bagwell**

Bagwell contends that the ALJ's reasons for finding her not credible are contrary to the evidence in the record. She also contends that his findings are legally insufficient to support an adverse credibility finding. Bagwell contends that the ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence of record and clear enough for subsequent reviewers the weight the adjudicator gave to the claimant's statement.

The Commissioner contends that the ALJ properly discounted Bagwell's subjective complaints. Further, the Commissioner contends that deference should be given to the ALJ.

The record shows that the ALJ considered the evidence, noting that Bagwell was in a motorcycle accident on January 29, 2012, that she continued to work, and did not stop working until February 1, 2013. R. Doc. 14-2, Tr. 17. He further noted that the reason she quit working was because

the attorney whom worked for was retiring. *Id.* The ALJ also noted that despite the alleged disability onset date, Bagwell had represented to the unemployment agency that she was ready, willing, and able to work because she collected unemployment in all four quarters. *Id.* He noted that she continued to treat with the same doctor for two and one-half years before going to a pain management doctor who she declined treatment. *Id.* As mentioned above, while Bagwell testified that she suffered with chronic diarrhea, her daily activities, daily trips to Wal-Mart and the nursing home, and the medical records suggested otherwise. *Id.*

The ALJ did not err in assessing the Plaintiff's credibility with respect to her subjective complaints. The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible *See Hollis v. Bowen,* 837 F.2d 1378, 1384–85 (5th Cir. 1988) (explaining that the lack of objective factors supporting subjective allegations of pain were properly considered in determining credibility); *see also Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir.1995) (considering a plaintiff's daily activities as support for the ALJ's findings that the plaintiff was capable of performing past relevant work). The ALJ's credibility findings with respect to the plaintiff's subjective complaints are supported by substantial evidence.

### V. **Reccomendation**

Accordingly,

**IT IS RECOMMENDED** that the ALJ's decision denying Wendy Bagwell's claim for Disability Insurance Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 13th day of June 2018

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.